Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Robert K. Friedl (SBN 134947)
Robert.Friedl@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff
CARLOS BARRIOS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS BARRIOS, individually, and on behalf of a class of similarly situated individuals,<br><br>          Plaintiff,<br><br>     v.<br><br>ZICO BEVERAGES LLC, a Delaware limited liability company,<br><br>          Defendant. | Case No.:  2:17-cv-01712-FMO-KSx<br><br>Hon. Fernando M. Olguin<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY**<br><br>Date:          July 3, 2017<br>Time:          10:00 a.m.<br>Dept.:          6D (1st Street Courthouse)<br><br>Complaint Filed:  March 2, 2017 |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................. 1

II.  PLAINTIFF HAS ADEQUATELY ALLEGED THAT ZICO
     COCONUT WATER VIOLATES FDA REGULATIONS
     BECAUSE IT DOES NOT RESEMBLE OR SUBSTITUTE FOR
     A FOOD THAT NORMALLY CONTAINS ADDED SUGARS ................ 4

     A.   Plaintiff Plausibly Alleges That Zico Coconut Water
          Resembles and Substitutes for Coconut Water and Coconut
          Water Does Not Normally Contain Added Sugars ............................... 4

     B.   Plaintiff Has Plausibly Alleged That There is No Food That
          Zico Coconut Water Resembles and Substitutes For That
          Normally Contains Added Sugars ........................................................ 7

III. PLAINTIFF HAS ALLEGED THAT ZICO COCONUT WATER
     VIOLATES FDA REGULATIONS BECAUSE IT CONTAINS
     ADDED SUGARS AND COULD AMEND TO ADD DETAIL, IF
     NECESSARY ................................................................................ 12

IV.  THE FDA DID NOT EXEMPT FRUIT JUICES FROM THE
     "RESEMBLES" AND "SUBSTITUTES FOR" REQUIREMENT
     FOR "NO SUGAR ADDED" CLAIMS ......................................... 13

     A.   The Rules of Statutory Construction Do Not Permit
          Defendant's Interpretation of Section 101.60(c)(2)(iv) That
          100% Fruit Juices Resemble and Substitute for All Other
          Fruit Juices and Beverages Containing Fruit ....................................... 14

     B.   The FDA Specifically Recognized the Widespread Use of
          "No Sugar Added" On Fruit Juices and Rejected a Proposal
          to Exempt Them from the Regulation ................................................. 15

     C.   The "FDA Inspection Guide" Does Not Set Forth What

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Foods Resemble and Substitute for Other Foods and Has No

Relevance to the Application of Section 101.60(c)(2)(iv) ..................16

V.   PLAINTIFF HAS ADEQUATELY PLEADED CLAIMS UNDER

THE UCL, FAL AND CLRA...........................................................................17

   A.   Plaintiff Has Adequately Pleaded Violations of the Unlawful

Prong of the UCL......................................................................................17

   B.   Plaintiff Has Adequately Pleaded Violations of the

Fraudulent and Unfair Prongs of the UCL, the FAL and the

CLRA.......................................................................................................18

VI.   PLAINTIFF'S CLAIMS ARE NOT PREEMPTED .....................................21

VII.   PLAINTIFF HAS STATUTORY AND ARTICLE III STANDING ..........22

   A.   Plaintiff Has Statutory Standing ...........................................................22

   B.   Plaintiff Has Article III Standing ..........................................................23

VIII.   THERE ARE NO GROUNDS TO IMPOSE A STAY ................................25

IX.   CONCLUSION...............................................................................................25

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ackerman v. Coca-Cola Co.*, No. 09 Civ. 395, 2013 WL 7044866
(E.D.N.Y. July 18, 2013) .......................................................................25

*Bruton v. Gerber Products Co.*, 2017 WL 1396221--- Fed. Appx. --- (9th
Cir. 2017) ........................................................................... passim

*Cabral v. Supple, LLC*, No. 12 Civ. 85, 2012 WL 4343867 (C.D. Cal.
Sept. 19, 2012).......................................................................24

*Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984 (E.D. Cal. 2012)..............................23

*Chester v. TJX Companies, Inc.*, 2016 WL 4414768 (C.D. Cal. Aug. 18,
2016)...........................................................................24

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................24

*Dean v. Colgate-Palmolive Co.*, 2015 WL 399913 (C.D. Cal. June 17,
2015)...........................................................................25

*Gina Park v. Knudson and Sons, Inc.*, No. CV 14-7845-DMG (JPRx)
(C.D. Cal. Sept. 25, 2015)...........................................................1, 6

*Henderson v. Gruma Corp.*, 10-cv-04173 AHM (AJWx), 2011 WL
1362188 (C.D. Cal. April 11, 2011)...............................................24

*Koehler v. Litehouse, Inc.*, 2012 WL 6217635 (N.D. Cal. 2012) ...........................25

*Major v. Ocean Spray Cranberries, Inc.*, 2017 WL 1857291 (9th Cir. May
8, 2017) ...............................................................................3

*Perez v. The Kroger Co.*, No. 2:17-cv-02448-ODW-AGR, Dkt. No. 10
(C.D. Cal 2017) ........................................................................1

*Rahman v. Mott's LLP*, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ............. passim

*Rahman v. Mott's LLP*, 2014 WL 1379655 (N.D. Cal. Apr. 8, 2014) .......................3

*Rahman v. Mott's LLP*, 2014 WL 5282106 (N.D. Cal. 2014) .................................23

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012).................24

*Shahinian v. Kimberly-Clark Corp.*, 2015 WL 4264638 (C.D. Cal. July 10,

2015)..............................................................................................25

*Swearingen v. Santa Cruz Natural, Inc.*, 2016 WL 4382544 (N.D. Cal.
    Aug. 17, 2016) ............................................................................22

*U.S. v. Buckland*, 289 F.3d 558 (9th Cir. 2002) ...........................................14

*U.S. v. Carter*, 421 F.3d 909 (9th Cir. 2005)................................................14

*Washington Market Co. v. Hoffman*, 101 U.S. 112 (1879) .......................14

*Wilson v. Odwalla Inc., et al*, No. 2:17-cv-02763-DSF-FFM, Dkt. No. 22
    (C.D. Cal 2017) ..............................................................................1

**STATE CASES**

*Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008)................................17

*In re Tobacco II*, 46 Cal. 4th 298 (2009)...................................................23

*Karim v. Naked Juice Co. of Glendora et al.*, No. BC649121 (Cal. Sup. Ct.
    2017)...............................................................................................2

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (Cal. 2011) ................23

*Perez v. Naked Juice Co. of Glendora et al.*, No. BC649121 (Cal. Sup. Ct.
    2017)...............................................................................................2

*Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856 (2002) .......................17

**FEDERAL STATUTES**

21 C.F.R. § 101.13(d) ........................................................... 5, 14, 16

21 C.F.R. § 101.3(e)(1)................................................................4

21 C.F.R. § 101.30(b)(3) ............................................................7

21 C.F.R. § 101.60(c)(2)(iv)................................................. passim

21 U.S.C. § 343(a)........................................................................22

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) . 17, 18, 19, 22

Cal. Bus. & Prof. Code §§ 17500 (False Advertising Law (FAL))...................19, 22

Cal. Civ. Code §§ 1750 *et seq.* (Cons. Legal Remedies Act (CLRA)) .............19, 22

Cal. Health & Safety Code § 110765 ........................................................17

Cal. Health & Safety Code §§ 110665, 110670 ........................................................ 18

SECONDARY AUTHORITIES

58 Fed. Reg 2892 at 2910 (January 6, 1993) ..................................................... 1, 10

58 Fed. Reg. 2336 (Oct. 30, 2000) ................................................................ 11, 16

63 Fed. Reg 20450 at 20451 (April 24, 1998) .................................................. 1, 10

81 Fed. Reg. 33742 (May 27, 2016) ................................................................. 4, 12

http://juicecentral.org/health-information/frequently-asked-questions/ .................... 8

https://www.fda.gov/ICECI/Inspections/default.htm ................................................ 17

https://www.fda.gov/iceci/inspections/inspectionguides/ucm114704.htm .............. 17

https://www.merriam-webster.com/dictionary/resemble ........................................... 4

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.      INTRODUCTION

The Motion to Dismiss of Defendant Zico Beverages LLC ("Defendant") squarely presents one of the most important food labeling questions pending before California's District and State Courts.  Federal regulations imposed by the Food and Drug Administration ("FDA") strictly forbid the use of "No Sugar Added" claims on food product labels *unless* the product "resembles" and "substitutes for" a food that normally contains added sugars.  21 C.F.R. § 101.60(c)(2)(iv).  The important question is whether that regulation applies to fruit juices – a type a food that typically does not contain added sugars.  Here, the "fruit juice" in question is Zico 100% Coconut Water ("Zico Coconut Water").[1]

To say that this is one of the most important food labeling questions pending before the courts is not an exaggeration.  The question of whether FDA regulations permit "No Sugar Added" claims on fruit juices presents a simple issue of law that has (at least) twice been resolved against apple juice manufacturers at the pleading stage.  *See Rahman v. Motts LLP*, 2014 WL 325241, *5 (N.D. Cal. Jan. 29, 2014); *Gina Park v. Knudson and Sons, Inc.*, No. CV 14-7845-DMG (JPRx) (C.D. Cal. Sept. 25, 2015) (Dkt. 35 p. 11.)  But juice manufacturers have regrouped and have presented, in unison, in this and other cases, an identical theory that section § 101.60(c)(2)(iv) *allows* "No Sugar Added" claims on sugary fruit juices.

Two of those cases are in this District and either have or have had motions to dismiss pending on that theory.  *See Wilson v. Odwalla Inc., et al*, No. 2:17-cv-02763-DSF-FFM, Dkt. No. 22 (C.D. Cal 2017) (involving 100% orange juice and 100% juice and vegetable blends); and *Perez v. The Kroger Co.,* No. 2:17-cv-02448-ODW-AGR, Dkt. No. 10 (C.D. Cal 2017) (involving 100% apple juice).[2]  Also, waiting in the wings

---

[1] "Coconut water is considered a fruit juice for purposes of Hazard Analysis and Critical Control Point (HACCP) Regulations even though it is disputable whether coconuts are fruits. (*See* 58 Fed. Reg. 2892 at 2910 (January 6, 1993), and 63 Fed. Reg. 20450 at 20451 (April 24, 1998).  Certainly, coconut water does not resemble any other "fruit juice" in any sense.

[2] The defendant in *Perez v. Kroger* previously filed a motion to dismiss and has

1   are two state court cases in which the defendant has indicated it will file a demurrer by

2   mid-July on the grounds that "No Sugar Added" claims on their 100% juice products

3   do not violate section 101.60(c)(2)(iv).[3]

4          As discussed in detail below, the theory advocated by Defendant and other fruit

5   juice manufacturers in this District is completely unfounded.  There is no exception in

6   section § 101.60(c)(2)(iv) for fruit juices.  The language of the regulation does not

7   permit that inference and FDA commentary in the Federal Register confirms that the

8   regulation applies to fruit juice.  Moreover, Defendant's resort to an "FDA Inspection

9   Guide" – a document that has nothing to do with the sugar claim regulation – to argue

10   that all fruit juices "substitute for" each other under the regulation is unconvincing.

11          Defendant also argues that Plaintiff's allegations do not satisfy Rule 9(b)

12   because they do not explain how its "No Sugar Added" label claim would deceive a

13   reasonable consumer.  However, the complaint clearly articulates why the "No Sugar

14   Added" claims are deceptive.  The combination of (a) the presence of the "No Sugar

15   Added" claim on Zico Coconut Water (in violation of FDA regulations), and (b) the

16   lack of "No Sugar Added" claims on competitors' products (in compliance with FDA

17   regulations), makes Defendant's labeling likely to mislead reasonable consumers into

18   believing that due to sugar content Defendant's products are better than their

19   competitors' products.  (*See* FAC ¶ 53.)  The Ninth Circuit has recently reversed

20   summary judgment in a food labeling case based on this exact theory.  *Bruton v.*

21   *Gerber Products Co.*, 2017 WL 1396221, *3 --- Fed. Appx. --- (9th Cir. 2017).

22          Defendant's other arguments for dismissal fare no better.  Defendant argues that

23   Plaintiff's "No Sugar Added" *theory* was rejected in *Rahman v. Mott's*, 2014 WL

24   5282106 (N.D. Cal. Oct. 5, 2014).  (Mot. pp. 1-2)  The statement is false.  In that case,

25   the court found that plaintiff's "No Sugar Added" theory was well pleaded.  *Rahman v.*

---

26   indicated it move to dismiss a recently filed amended complaint.

27       [3] *Karim v. Naked Juice Co. of Glendora et al.*, No. BC649121 (Cal. Sup. Ct.
2017) (involving orange juice) and *Perez v. Naked Juice Co. of Glendora et al.*, No.

28   BC649121 (Cal. Sup. Ct. 2017) (involving coconut water).

*Mott's*, 2014 WL 1379655, *4 (N.D. Cal. Apr. 8, 2014) ("These allegations are sufficient to explain "how" the labeling at issue is misleading to a reasonable consumer. Accordingly, the Court denies defendant's motion to dismiss these claims for failure to satisfy Rule 9(b) and the reasonable consumer standard.")[4]  To be sure, no case in existence to Plaintiff's knowledge "rejects the theory" that "No Sugar Added" claims on fruit juices are deceptive.[5]

Defendant also argues Plaintiff's claims are preempted by the Food, Drug, and Cosmetic Act ("FDCA").  Defendant is incorrect because Plaintiff *is not* attempting to impose requirements different than those imposed by the FDA.  Defendant then argues that Plaintiff does not have Article III standing to pursue injunctive relief.  As discussed below, there is significant case authority to contradict that argument and, in any event, Plaintiff has sufficiently pleaded a basis for Article III standing.

Finally, Defendant argues that this case should be stayed pending the result of an appeal in the *Rahman* case.  A stay would not promote judicial economy because the central issue in this case – i.e. whether Defendant's "No Sugar Added" claim violates section  101.60(c)(2)(iv) – is not an issue in that appeal.  To the extent the *Rahman* appeal could clarify the law regarding Article III standing, it could affect no more than

---

[4] Defendant cites to a later summary judgment ruling in which the *Rahman* court found that plaintiff's expert evidence did not raise a triable issue on the issue.  That decision, moreover, appears to conflict with *Bruton*, which held that plaintiff's own testimony, evidence of the defendant's and competitors' labels, and two FDA warning letters raised a triable issue of fact.  *Bruton*, 2017 WL 1396221, *3 (citing the non-expert evidence that Bruton submitted that raise a triable issue).

[5] Defendant also misleadingly cites the holding in *Major v. Ocean Spray Cranberries, Inc.*, 2017 WL 1857291 (9th Cir. May 8, 2017) as standing for the incorrect proposition that the "the Ninth Circuit affirmed summary judgment in favor of Ocean Spray, in part because its "No Added Sugar" claims on its 100% Juice complied with the same regulation at issue here , 21 C.F.R. § 101.60(c)(2)(i)-(v)." (Mot. p. 223 n. 12.)  The statement is incorrect.  The claim in *Major* was not that the "No  Added Sugar" label violated section 101.60(c)(2)(**iv**) but that the juice (a) contained added sugars and (b) the label should have contained a disclaimer under section 101.60(c)(2)(**v**) that it was not low calorie.  The court found (a) the juice had no added sugars and (b) plaintiff testified that she knew it was not low calorie when she bought it.

1     the availability of one type of remedy in this case – injunctive relief.

2         Moreover, it is worth mentioning that a related case with overlapping claims in

3     state court, *Jason Reza v. Zico Beverages LLC*, LASC Case No. BC647064, *is stayed* at

4     Defendant's request, not because of *Rahman*, but because *this case* is pending in

5     federal court.  Defendant cannot be permitted to stay the state case on the premise the

6     federal case will go forward and then stay the federal case because the appeal of

7     another federal case is pending.  For all these reasons, the motion to dismiss and/or stay

8     the case should be denied.

9     **II.    PLAINTIFF HAS ADEQUATELY ALLEGED THAT ZICO COCONUT**

10           **WATER VIOLATES FDA REGULATIONS BECAUSE IT DOES NOT**

11           **RESEMBLE OR SUBSTITUTE FOR A FOOD THAT NORMALLY**

12           **CONTAINS ADDED SUGARS**

13         **A.    Plaintiff Plausibly Alleges That Zico Coconut Water Resembles and**

14               **Substitutes for Coconut Water and Coconut Water Does Not**

15               **Normally Contain Added Sugars**

16         21 C.F.R. § 101.60(c)(2) is the FDA's "'no added sugar,' 'without added

17     sugar,' or 'no sugar added' nutrient content claim regulation." *See* 81 Fed. Reg.

18     33742, 33733 (May 27, 2016).  Section 101.60(c)(2)(i)-(v) is written in the

19     conjunctive, and prohibits these sugar content claims on food products unless the

20     product meets *each* of five separate criteria.  Here, Plaintiff alleges that Zico

21     Coconut Water violates section 101.60(c)(2)(iv), which strictly forbids those sugar

22     content claims on a food product unless "[t]he food that it **resembles** and for

23     which it **substitutes** normally contains added sugars."

24         The word "resembles" means "to be like or similar to."[6]  The FDA utilizes

25     the word according to that common meaning.  For example, by definition an

26     "imitation" food "resembles" another food.[7]  The definition of a "substitute" food

27     ───────────────────

28     [6] https://www.merriam-webster.com/dictionary/resemble

     [7] 21 C.F.R.§ 101.3(e)(1) provides: "A food shall be deemed to be an imitation

is stated in 21 C.F.R. § 101.13(d), which provides: "A 'substitute' food is one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an 'imitation.'"

Here, according to its label, the food product Zico Coconut Water is "natural 100% coconut water not from concentrate." (*See* FAC p. 2.)  Therefore, Plaintiff plausibly alleges that "[t]he food that Zico Coconut Water resembles and for which it substitutes is pure coconut water harvested from a coconut." (FAC ¶ 48.) Plaintiff further alleges (and Defendant does not dispute) that "[p]ure coconut water harvested from a coconut does not normally contain added sugars." (FAC ¶ 49.)  Accordingly, Plaintiff has adequately alleged that the "No Sugar Added" claim on the label violates section 101.60(c)(2)(iv).

The notion that a fruit juice product cannot utilize a "No Sugar Added" label claim because that type of juice does not normally contain added sugars breaks no new legal ground.  In *Rahman v. Motts*, the court held that virtually identical allegations pertaining to Mott's 100% Apple Juice sufficiently pleaded a violation of section 101.60(c)(2)(iv).  Specifically, Mr. Rahman alleged that Mott's 100% Apple Juice does not resemble and substitute for food that normally contains added sugar because other brands of apple juice generally do not contain added sugar due to the substantial inherent sugar content of apple juice.  *Rahman v. Mott's LLP*, 2014 WL 325241, *5.  The court held, "[a]ccordingly, plaintiff has sufficiently alleged that the food that defendant's 100% Apple Juice resembles and for which it substitutes does not normally contain added sugar and, therefore, has properly alleged a violation of section 101.60(c)(2)(v)[8] as to this product."  Significantly, in reaching this conclusion, the court relied on section 101.13(d) and FDA

and thus subject to the requirements of section 403(c) of the act if it is a substitute for and resembles another food but is nutritionally inferior to that food."

[8] This is a typographical error in the original.  The court was discussing section 101.60(c)(2)(iv).

commentary:

> 21 C.F.R. § 101.13(d) provides: "A 'substitute' food is one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an 'imitation.' " **As an example, the FDA states that the food "no salt added" canned corn resembles and for which it substitutes is canned corn, not frozen corn. 58 Fed.Reg. at 2325; see also 56 Fed.Reg. 60421, 60432 (Nov. 27, 1991) (stating that "sodium free Italian bread" is a substitute for Italian bread).**

*Rahman*, 2014 WL 325241, n. 4, (added emphasis).  (*Cf.* FAC ¶¶ 46-47.)

The *Rahman* court is not alone in determining that a "No Sugar Added" label claim on a type of fruit juice that normally does not contain added sugars violates the "resembles" and "substitutes for" requirement in section 101.60(c)(2)(iv).  In *Gina Park v. Knudson and Sons, Inc.*, No. CV 14-7845-DMG (JPRx) (C.D. Cal. Sept. 25, 2015), a court in this district came to exactly the same conclusion.  In *Park*, the plaintiff alleged that "Defendants' 100% 'Organic Apple' juice does not 'resemble' or 'substitute for' food that normally contains added sugar because other brands of 100% apple juice generally do not contain added sugar due to the substantial inherent sugar content of apple juice." *Id.* at p. 11.  As in *Rahman*, the court held that these allegations were sufficient to plead a violation of section 101.60(c)(2)(iv).  *Id.*

Here, it is beyond reasonable dispute that the product Zico Coconut Water resembles and substitutes for the food "coconut water."  Its label states:

> "guess what's in this bottle?  If you said 'Umm, coconut water?' you nailed it."

(*See* FAC p. 3.)  Defendant's own label identifies the food it resembles and for which it substitutes.  That food is coconut water.

**B.**     **Plaintiff Has Plausibly Alleged That There is No Food That Zico Coconut Water Resembles and Substitutes For That Normally Contains Added Sugars**

Defendant retorts that it is "implausible" that "the only substitute foods for the Zico Coconut Water is 'pure coconut water harvested from a coconut.'"  (Mot. p. 21.) The argument misses the point, which is that if there is a food which Zico Coconut Water resembles and substitutes for, identifying that food is Defendant's burden since that is its defense to the claim that its label is unlawful.

First, the prerequisite for using a "No Sugar Added" claim on a food product under section 101.60(c)(2)(iv) is that "[t]he food that it resembles and for which it substitutes normally contains added sugars."  It is not "implausible" that the regulation means what it says – that there must *exist* a food that the food product resembles and substitutes for in order to use the "No Sugar Added" claim.

Second, in addition, Plaintiff alleges, "[t]there is no food that Zico Coconut Water resembles and substitutes for that contains added sugars."  (FAC ¶ 50.) This, too, is a plausible allegation.  The allegation is plausible because 100% juices by definition do not normally contain *added* sugars.  21 C.F.R. § 101.30(b)(3) provides:

> (3) If the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids or, in the case of expressed juice, in a change in the volume, when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added _____," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener"), except that when the presence of the non-juice ingredient(s) is declared as a part of the statement of identity of the product, this phrase need not accompany the 100 percent juice declaration.

Thus, food products bearing the statement "100% Juice" without any qualifying "with" clause, do not normally contain added sugar.  This is confirmed by fruit juice

1  advocate Juice Central. ("There are no added sugars in 100 percent juice – just the

2  natural sugars found in whole fruit.")[9]  As discussed above, coconut water is by

3  definition the juice of a coconut.  Any competitor's 100% coconut water will by

4  definition not contain added sugars.

5       Third, because Plaintiff plausibly alleged that Zico Coconut Water resembles

6  and substitutes for the food coconut water, that coconut water does not normally

7  contain added sugars, and that no food exists that Zico Coconut Water resembles and

8  substitutes for, Plaintiff has stated a prima facie case of Defendant's violation of section

9  101.60(c)(2)(iv).  It was therefore up to Defendant to demonstrate those allegations are

10  not plausible by identifying some food that Zico Coconut Water resembles and

11  substitutes for *under the regulations* that normally contains added sugars.

12       For example, in *Rahman*, the defendant, Mott's, attempted to avoid the

13  obvious conclusion that its 100% Apple Juice resembles and substitutes for apple

14  juice by arguing that other types of juices contain added sugar, such as Cranberry

15  Apple Juice Cocktail and Cranberry Apple Raspberry Juice.  *Rahman*, 2014 WL

16  325241, n. 5.  The argument was rejected by the court because Mott's "failed to

17  explain how its 100% Apple Juice product would 'substitute' for these juices under

18  these regulations." *Id.*

19       As in *Rahman*, Defendant proffers evidence of other beverage labels (fifteen

20  to be precise) to establish that Zico Coconut Water resembles and substitutes for

21  beverages that contain added sugars.  However, as in *Rahman*, Defendant fails to

22  even attempt to explain how Zico Coconut Water "resembles" or "substitutes for"

23  these food products under the regulations.  Clearly, it does not.  Zico Coconut

24  Water does not "resemble" those other products – mostly juice blends and none of

25  which are 100% coconut water.  Nor does Defendant argue, or present evidence,

26  that Zico Coconut Water "is organoleptically, physically, and functionally

27  (including shelf life) similar to, and that it is not nutritionally inferior to" any of

28       [9] http://juicecentral.org/health-information/frequently-asked-questions/

those other products.  Clearly, it is not.[10]  Because Defendant cannot explain how Zico Coconut Water "resembles" and "substitutes for" any food that contains added sugars under the regulations, Plaintiff has adequately pleaded that Defendant's Zico Coconut Water violates section 101.60(c)(2)(iv).

In short, section 101.60(c)(2)(iv) presents no free pass to label fruit juices with the attractive "No Sugar Added" label claim.  Defendant chose to manufacture and sell pure 100% Coconut Water.  Then – knowing full well the law – Defendant labeled that product with a "No Sugar Added" claim.  Defendant cannot now complain that it may be difficult or impossible for it to justify that claim by identifying a food that its coconut water resembles and substitute for other than its competitors' coconut water products, which also do not normally contain added sugars.

If other coconut water products contain added sugars, Defendant has not brought them to the attention of the Court.  Instead, Defendant presents many meritless arguments.

First, Defendant ignores the clear allegations in paragraph 50 ("[t]there is no food that Zico Coconut Water resembles and substitutes for that contains added sugars") and seizes upon an ambiguous and awkwardly stated allegation in paragraph 28(b) of the complaint in order to attempt to muddy the allegations in the pleading.[11]  (Mot. pp. 5-6, n. 4.)  The intended meaning of the allegation was the food that Zico Coconut Water *does* resemble and substitute for (coconut water) *does not* contain added sugars.  Defendant's argument amounts to nothing because the allegation is made abundantly clear elsewhere.  *See* FAC ¶ 49 "Pure coconut water harvested from a coconut does not normally contain added sugars."[12]

---

[10] For that matter, Defendant fails to even present evidence that any of these other products contain added sugar.

[11] "Zico Coconut Water does not resemble and substitute for a food that normally contains added sugars including, without limitation, pure coconut water harvested from a coconut."  (FAC ¶ 12(b))

[12] Defendant does not stop there with its arguments based on obvious typographical error.  Defendant points to an inadvertent reference to "orange juice" *in*

1   Second, Defendant argues the allegation, that Zico Coconut Water does not
2   resemble or substitute for a food that normally contains added sugars, "merely
3   recites the language" of section 101.60(c)(2)(iv).  (Mot. p. 12.)  However, the
4   allegation is plausible for the reasons stated above.  Moreover, to ask for more
5   would be to ask Plaintiff to plead a negative.  As discussed above, it is Defendant's
6   burden to come up with a food with added sugar that its product resembles and
7   substitutes for to disprove Plaintiff's allegation that no such food exists.

8   Third, Defendant attempts to tie its "merely recites the language" argument
9   with *Rahman,* quoting *Rahman* regarding its dismissal of "No Sugar Added"
10  claims on apple sauce: "[P]laintiff does not allege that other brands of apple sauce
11  generally do not contain added sugars".  (Mot. pp. 12-13.)

12  The contrast between Plaintiff's allegations regarding Zico Coconut Water
13  in this case and the apple sauce product in *Rahman* is significant.  It is plausible
14  that the food coconut water does not normally contain added sugars because
15  "[p]ure coconut water harvested from a coconut does not normally contain added
16  sugars" (FAC ¶ 49) and coconut water is the liquid extracted from coconut.  *See* 58
17  Fed. Reg. 2892 at 2910; January 6, 1993, and 63 Fed. Reg. 20450 at 20451; April
18  24, 1998).  By definition, 100% coconut water never contains added sugars.  Apple
19  sauce, on the other hand, is not a 100% juice product.  It is a prepared food that
20  *does* normally contain added sugars.

21  Finally, Defendant challenges Plaintiff's interpretation of the regulation
22  itself.

23  Defendant argues that Plaintiff has presented a "strained interpretation" of
24  the applicable federal regulations buttressed by "misleading" citations to FDA
25  commentary "in an effort to cloak his dubious claims."  (Mot. p. 14.)  Defendant is

26

27  *the original complaint* in order to attempt to sow confusion over the clear allegation *in
    this complaint* that coconut water does not normally contain added sugars.  (Mot. p.
28  21.)

referring to Plaintiff's *accurate* quotation from the Federal Register that "the 'no added sugar' claim is not appropriate to describe foods that do not normally contain added sugars … e.g. fruit juices." 58 Fed. Reg. 2302, 2336 (Jan. 6, 1993). Then, despite the FDA's direct reference to fruit juices as foods that do not normally contain added sugars, Defendant makes the puzzling suggestion that what the FDA really meant was "for example, a 'No Sugar Added' claim may not be appropriate for ***broccoli***." (Mot. p. 19.) Plaintiff's reference to the FDA comments is not "misleading" and Defendant's argument that FDA was talking about "No Sugar Added" claims on broccoli, not fruit juice, is unsupported.

Next, Defendant presents an argument that because a different regulation – section 101.60(c)(3) – allows some different types of sugar claims (but not "No Sugar Added" claims) under some circumstances, and "Defendant is simply saying that its coconut water does not contain any *added* sugar, … [t]he FDA contemplates, and expressly allows, 'No Sugar Added' claims under these circumstances." (Mot. p. 19-20.) Section 101.60(c)(3) does not govern "No Sugar Added" claims and has no application here. The FDA explained:

> [T]he "no added sugar" claim is not appropriate to describe foods that do not normally contain added sugars. In such cases, proposed § 101.60(c)(3) would provide for the use of a factual statement that the food is unsweetened, or that it contains no added sweeteners in the case of a food that contains apparent substantial inherent sugar content, e.g., fruit juices, without requiring that the food meet the definition for "sugar free."

58 Fed. Reg. at 2336. Section 101.60(c)(3) does not allow, by implication, "No Sugar Added" claims on foods like coconut water that do not normally contain added sugars.

Finally, Defendant argues that "nowhere in the actual 'No Sugar Added' regulation does the FDA say that a 'No Sugar Added' claim is inappropriate for use on juice products." (Mot. p. 20.) Again, Defendant's argument lacks merit. Section 101.60(c)(2)(iv), forbids "No Sugar Added" claims on any food product unless "[t]he food that it resembles and for which it substitutes *normally* contains

added sugars." (Added emphasis.) [13] Coconut water is a food that does not normally contain added sugars.

### III.   PLAINTIFF HAS ALLEGED THAT ZICO COCONUT WATER VIOLATES FDA REGULATIONS BECAUSE IT CONTAINS ADDED SUGARS AND COULD AMEND TO ADD DETAIL, IF NECESSARY

Plaintiff's investigation of Zico Coconut Water led to information from which one could conclude that some Zico Coconut Water *does* contain added sugars. Accordingly, Plaintiff has also alleged that "Defendant's "No Sugar Added" claims on Zico Coconut Water are in violation of FDA and state regulations because, on information and belief, Zico Coconut Water contains sugar that is added during processing or packaging (21 C.F.R. § 101.60(c)(i))." (FAC ¶ 43.)

Obviously, if Zico Coconut Water contains added sugars and claims "No Sugar Added" on its label, its label is not only illegal but actually false. Plaintiff also alleges that this claim is supported by laboratory ingredient analysis. (FAC ¶ 29.) Defendant complains that these allegations are not sufficient to plead the basis for Plaintiff's added sugar claim under Rule 9 (Mot. pp. 13-14) and that details such as the types of added sugars should be pleaded (Mot. p. 11).

However, shortly before Defendant filed the motion to dismiss Plaintiff identified the source of this information in his initial disclosures to Defendant. Plaintiff did not initially plead this information because it is potentially sensitive to Defendant and Plaintiff wished to first inform Defendant of the source. However, Plaintiff can amend the complaint to state that information in his pleading and will gladly do so,

---

[13] To the extent Defendant suggests that Plaintiff alleges that under section 101.60(c)(2)(iv) fruit juices *categorically* cannot bear "No Added Sugar " label claims, Defendant overstates Plaintiff's allegations in this action. The regulation bars "No Added Sugar" claims on food products unless the food they resemble and substitute for *normally* contains added sugars. It is possible that such a fruit juice product exists. For example, cranberry juice is reportedly "sweetened for palpability." (81 Fed. Reg. 33742, 33772 (May 27, 2016).) Arguably, a cranberry juice product that did not contain added sugar could use a "No Added Sugar" claim on its label.

1   with leave of Court, if Defendant indicates in its reply brief that it still requires more

2   specificity in the pleading of this claim to respond to the complaint.

3   **IV.   THE FDA DID NOT EXEMPT FRUIT JUICES FROM THE**

4   **"RESEMBLES" AND "SUBSTITUTES FOR" REQUIREMENT FOR**

5   **"NO SUGAR ADDED" CLAIMS**

6          In an attempt to get around the "resembles" and "substitutes for"

7   requirement for "No Sugar Added" claims, Defendant implies that the FDA

8   intended to abandon the dictionary definition of "resembles" and the regulation

9   defining "substitute" foods in the case of fruit juices.  Instead, Defendant argues,

10  based on an "FDA Inspection Guide," that the FDA intended in the case of fruit

11  juices to define "substitute" foods under section 101.60(c)(2)(iv) so broadly that

12  *all fruit juice products in existence* substitute for *all other fruit juices products in*

13  *existence* as well as "*any noncarbonated drinks containing any amount of fruit*

14  *juice or nectar.*"  (Mot. pp. 4, 6, 18, 21.)  Defendant's argument ignores the

15  additional requirement in the regulation: the product with the "No Sugar Added"

16  label claim must also "resemble" a product with added sugar.  Defendant's

17  argument is that because beverages exist that contain both fruit and added sugar,

18  Defendant can lawfully put "No Sugar Added" claims on fruit juice products that

19  do not contain added sugar to distinguish them from those products. (*Id.*)

20         The argument is completely without support.  The language of the regulation

21  does not permit that inference and FDA commentary in the Federal Register

22  confirms that the regulation applies to fruit juice.  Moreover, the "FDA Inspection

23  Guide" has nothing to do with the sugar claim regulation.

24

25

26

27

28

**A.   The Rules of Statutory Construction Do Not Permit Defendant's Interpretation of Section 101.60(c)(2)(iv) That 100% Fruit Juices Resemble and Substitute for All Other Fruit Juices and Beverages Containing Fruit**

The starting point for interpreting a statute is the language of the statute itself.  If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.  Where the language is not dispositive, we look to the congressional intent revealed in the history and purposes of the statutory scheme. *U.S. v. Buckland*, 289 F.3d 558, 564 (9th Cir. 2002).  Another fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.  *U.S. v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005).  The United States Supreme Court further explained, "[i]

> It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.  As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'

*Washington Market Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879).

The Court need go no further than the regulation itself to reject Defendant's interpretation of section 101.60(c)(2)(iv).  Section 101.60(c)(2)(iv) is unambiguous.  It strictly forbids the enumerated sugar content claims on a food product unless "[t]he food that it resembles and for which it substitutes normally contains added sugars."  As discussed above, the word "resembles" has a common meaning and 21 C.F.R. § 101.13(d) defines a "substitute" food very precisely.[14]  Moreover, *the regulation does not contain an exception for fruit juices.*

---

[14] i.e. one that may be used interchangeably with another food that it resembles, i.e., that it is organoleptically, physically, and functionally (including shelf life) similar to, and that it is not nutritionally inferior to unless it is labeled as an imitation.

Defendant's interpretation of the regulation fails to give effect to the word "resembles" in the regulation. That is fatal. Every fruit juice does not resemble every other fruit juice and beverage. In addition, Defendant's theory that all fruit juices are "substitutes" for all other fruit juices (and even beverages that only have juices as an ingredient) is contrary to the definition of "substitute" foods. Finally, if the regulation in fact allowed any food products that do not have added sugar to bear "No Sugar Added" claims, section 101.60(c)(2)(iv) would be meaningless.

Defendant's only recourse to FDA regulations is to argue "[t]he FDA considers juice as an established, broad category of beverages, as set forth in 21 C.F.R. § 101.30." The argument is unsupported by the text of the regulation. Section 101.30 is entitled "Percentage juice declaration for foods purporting to be beverages that contain fruit or vegetable juice." The regulation does not purport to establish that all beverages purporting to contain fruit resemble and substitute for each other.

**B.    The FDA Specifically Recognized the Widespread Use of "No Sugar Added" On Fruit Juices and Rejected a Proposal to Exempt Them from the Regulation**

Even if the regulations were not crystal clear, the FDA's intent to subject fruit juices to the requirements of section 101.60(c)(2)(iv) is. The FDA *expressly considered and rejected* a request exempting fruit juice from the regulation:

> A similar comment requested that FDA exempt pure fruit juices from the provisions of proposed § 101.60(c)(2) or revise this section by deleting proposed § 101.60(c)(2)(iv) … (i.e., the requirements that the food that the product resembles and for which it substitutes normally contains added sugars …). The comment stated that a "no added sugar" claim on fruit juices had been used for many years without consumer confusion …
>
> The agency disagrees with the fundamental position of these comments that a special allowance for the "no added sugar" claim should be made when the sugars added to a food are inherent to the ingredient through which they are added. As discussed in comment 79 in section III.B.c.ii. of this document, the agency believes that it is misleading to imply

1
2
3

> that a food that contains inherent sugars is nutritionally superior to a food that contains refined sugars. … The agency concludes that granting the allowances that these comments seek would permit the use of "no added sugar" in a manner that is inconsistent with the purpose of this claim …

4   58 Fed. Reg. at 2337.

5          Thus, the FDA was aware that manufacturers like Defendant have used "No

6   Sugar Added" claims on fruit juices for years, but declined to legalize that conduct

7   by exempting fruit juices from section 101.60(c)(2)(iv) because the FDA

8   determined that "No Sugar Added" claims on fruit juice are misleading.

9          C.      **The "FDA Inspection Guide" Does Not Set Forth What Foods**

10                 **Resemble and Substitute for Other Foods   and Has No Relevance to**

11                 **the Application of Section 101.60(c)(2)(iv)**

12          Defendant points to a 19-page document that it calls an "FDA Inspection

13   Guide" and asserts that it shows that *under section 101.60(c)(2)(iv) and section*

14   *101.13(d)* "the FDA views the 'substitute' juice category broadly: as 'all fruit

15   juices (excluding lemon and lime juice), nectars, [and] noncarbonated drinks

16   containing any amount of juice or nectar."  (Mot. pp. 2, 13, quoting Ex. F. p. 13.)

17   The document *does not say that all fruit juices, etc. resemble or substitute for each*

18   *other.*  It states that certain types of "products" fall into certain "product

19   categories," in connection with FDA inspections of food manufacturing facilities,

20   and that "imitation or substitute products belong to the same product categories as

21   the products that they imitate or for which they substitute."  (Def. RJN Ex. E. p.

22   1/19.)  It has nothing to do with the sugar content claim regulation.

23          A visit to the FDA website confirms that the "Inspection Guide" is not

24   evidence that – contrary to sections 101.60(c)(2)(iv) and 101.13(d), contrary to the

25   FDA's own comments and contrary to the holding in *Rahman* – the FDA intended

26   that, under the regulation governing "No Sugar Added" claims, all fruit juices

27   "substitute" for each other.  The page entitled "Product Categories and Products,"

28

when viewed online[15] (but not when printed), shows how to navigate to the page:

Home > Inspection, Compliance, Enforcement, and Criminal
Investigations > Inspection References > Inspection Guides

In addition, when viewed online the title of the webpage is displayed:

"**Inspections, Compliance, Enforcement, and Criminal Investigations.**"

The prior page, from which the "Inspection Guide" is linked, explains the purpose of the document and the numerous other reference materials available on that page: "[t]his page includes information provided to FDA investigators and inspectors to assist them in their daily activities. It also includes links to the inspection references that were previously available on Gold Disk."[16]

Thus, the "FDA Inspection Guide" is not an indication that the FDA views fruit juices as a "broad category" in which all fruit juices are "substitutes" for all other fruit juices. It is a reference material for FDA investigators and inspectors to assist them in their duties related to compliance, enforcement and criminal investigations.

## V.   PLAINTIFF HAS ADEQUATELY PLEADED CLAIMS UNDER THE UCL, FAL AND CLRA

### A.   Plaintiff Has Adequately Pleaded Violations of the Unlawful Prong of the UCL

The UCL's unlawful prong "borrows" predicate legal violations and treats them as independently actionable under the UCL. *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). Here, California's Sherman Law broadly prohibits the misbranding of food. *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008) (citing Cal. Health & Safety Code § 110765). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938 ("FDCA") as the

---

[15] https://www.fda.gov/iceci/inspections/inspectionguides/ucm114704.htm
[16] https://www.fda.gov/ICECI/Inspections/default.htm

food labeling regulations of California.  *Id*. at 1087; Cal. Health & Safety Code § 110100(a); *see also* Cal. Health & Safety Code §§ 110665, 110670.**Error! Bookmark not defined.**  The predicate legal violations in this case are Defendant's violations of section 101.60(c)(2)(i) and (iv).

Defendant's alleged violations of section 101.60(c)(2), standing alone, states a claim under the UCL.  Under California law, the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation.  *Bruton*, 2017 WL 1396221, *3.  Here, the predicate regulation contains *no requirement* that the public be likely to experience deception.  *Id*. Accordingly, Plaintiff has adequately pleaded violations of the unlawful prong of the UCL.

> **B.**   **Plaintiff Has Adequately Pleaded Violations of the Fraudulent and Unfair Prongs of the UCL, the FAL and the CLRA**

Defendant argues that Plaintiff fails to allege how a reasonable consumer would be deceived by its "No Sugar Added" label.  In particular, Defendant argues that Plaintiff's allegations fail to explain how its label is false or misleading (Mot. p. 3, 13, 14) or draw a comparison between Zico Coconut water and other products.  (Mot. p. 3.)  These arguments fail under *Bruton*.  Plaintiff alleges:

> 52.   The "No Sugar Added" claim on Zico Coconut Water is deceptive for two reasons.  First, on information and belief, Zico Coconut Water contains added sugar that is not indigenous to the coconut and thus the claim of "No Sugar Added" is literally false and hence deceptive.

> 53.   Second, and alternatively, absent a perception by consumers that comparable products sometimes include added sugars, Defendants would not have used the "No Sugar Added" claim on Zico Coconut Water at all. … However, the combination of (a) the presence of the "No Sugar Added" claims on Zico Coconut Water (in violation of FDA regulations), and (b) the lack of "No Sugar Added" claims on competitors' products (in compliance with FDA regulations), makes Defendant's labeling likely to mislead reasonable consumers into believing that due to sugar content Defendant's products are better than their competitors' products.

These allegations are sufficient.  The allegation that the product contains added sugar despite its label claim alleges deceptive conduct.  However, even if the "No Sugar Added" claim, is *literally* true, it is deceptive by its implications.

First, "No Sugar Added" claims, by definition, exist for the purpose of allowing consumers to draw comparisons between similar food products.  Indeed, whether the claim is allowed on a food product under section 101.60(c)(2)(iv) is defined by the food to which it is being compared.   Defendant admits it uses the claim to draw a comparison.  Defendant argues that it uses the "No Sugar Added" label to differentiate its coconut water from other products that contain added sugars.  (Mot. 20.)  However, Defendant's use of the label claim is deceptive because the only legitimate purpose of the claim is to compare products to foods meeting the "resembles" and "substitutes for" requirement.

The Ninth Circuit has held that the facts alleged by Plaintiff raise an inference of deceit.  In *Bruton*, the plaintiff alleged that labels on certain baby food products included claims about nutrient and sugar content that violated FDA regulations.  *Bruton*'s theory of deception, however, did not rely on proving that any of Gerber's labels were false.  Rather, *Bruton*'s theory was that the combination of (a) the presence of the claims on Gerber's products (in violation of FDA regulations), and (b) the lack of claims on competitors' products (in compliance with FDA regulations), made Gerber's labeling likely to mislead the public into believing that Gerber's products were of a higher quality than its competitors' products.  *Bruton*, 2017 WL 1396221, *1.

In evaluating this theory, the Ninth Circuit first noted that labels that are literally true may nevertheless be deceptive and misleading under consumer protection laws.  *Id.* at *2.  The court then reversed summary judgment on the issue of whether Gerber's labels were deceptive under the UCL, FAL and CLRA.  It held: "it may be literally true that Gerber's products are 'As Healthy As Fresh,' but due to external facts—that Gerber does not comply with the FDA regulations

that otherwise prevent its competitors from making the same claim—Gerber's labels mislead in their implications." *Id.*

Here, Plaintiff has pleaded the same theory of deception that the Ninth Circuit found compelling in *Bruton*. Specifically, that the combination of (a) the presence of the "No Sugar Added" claims on Zico Coconut Water (in violation of FDA regulations), and (b) the lack of "No Sugar Added" claims on competitors' products (in compliance with FDA regulations), makes Defendant's labeling likely to mislead reasonable consumers into believing that due to sugar content Defendant's products are better than their competitors' products. (*See* FAC ¶ 60.)

The court went on to explain that this theory of deception "comports with common sense" because the defendant's illegal label *does* draw comparisons by consumers:

> Shoppers in a supermarket aisle look for cues about quality in the products they buy. If a shopper sees two products on a shelf and one says "Supports Healthy Growth & Development," while the other makes no similar claim and is cheaper, a likely inference is that the first product will be viewed as healthier, explaining why it costs more.

*Bruton*, 2017 WL 1396221, *2.

The same holds true here. If a shopper for fruit juices sees Zico Coconut Water bearing a "No Sugar Added" claims and other brands of coconut water that (complying with the law) do not make that claim, the shopper will likely infer that the Zico Coconut Water is better. The *Bruton* court went on to explain:

> When everyone plays by the rules, this process works reasonably well. But when the maker of one product complies with a ban on attractive label claims, and its competitor does not do so, the normal assumptions no longer hold, and consumers will possibly be left deceived. We hold that Bruton has alleged a viable claim for consumer deception.

*Bruton*, 2017 WL 1396221, *2.

Here, Defendant does not play by the same rules as other coconut water manufacturers. Zico Coconut Water bears a "No Sugar Added" claim in violation

of FDA regulations while competitors who lawfully label their coconut water do not. (FAC ¶ 60.) All Plaintiff would need to do to survive summary judgment would be to produce evidence of the labels. *Bruton*, 2017 WL 1396221, *2 ("The key evidence is the labels. A reasonable jury observing Gerber's labels and comparing them to those of its competitors could rationally conclude that Gerber's labels were likely to deceive members of the public.") Accordingly, Plaintiff has articulated a theory of deception that is more than sufficient to survive a motion to dismiss.

Finally, the *Bruton* court confirmed that violation of the "No Sugar Added" regulation *is* likely to deceive a reasonable consumer:

> If Gerber's product says "No Added Sugar," and a competitor's product does not, the competitor's nutritional chart will not under current FDA requirements tell the consumer whether any of the sugar in its product was added—it will simply list the amount of "Sugars." See Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33742-01, 33742 (May 27, 2016) (codified at 21 C.F.R. pt. 101) (compliance date for new "Added Sugar" rule delayed until 2018 or 2019). Nevertheless, the reasonable assumption would be that some of the sugar in that competitor's product must have been added, or else the competitor would have used the attractive label "No Added Sugar."

*Bruton*, 2017 WL 1396221, *5, n.1

Accordingly, Plaintiff's complaint adequately pleads how a reasonable consumer would be deceived by Defendant's "No Sugar Added" claim.

## VI. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

Defendant argues that Plaintiff's claims are both expressly and impliedly preempted by the FDCA, as amended by the Nutrition Labeling and Education Act ("NLEA"). (Mot. pp. 15-17.) They argue that "states may not adopt food labeling requirements governed by the NLEA that are different from, or additional to, those imposed by the federal statutory scheme." (*Id* at 15.) Then, Defendant presents its incorrect argument that section 101.60(c)(2)(iv) actually *permits* the "No Sugar Added" claim on Zico Coconut Water. (Mot. p. 17-21.) Based on that argument,

1  Defendant concludes that Plaintiff "cannot impose requirements contrary to the
2  FDA. (Mot. p. 21.)

3       "First, while federal law prohibits state food labeling requirements that are
4  not identical to federal requirements, the FDCA and California law contain
5  identical prohibitions on false or misleading labeling."[17]  *Swearingen v. Santa Cruz*
6  *Natural, Inc.*, 2016 WL 4382544, *5 (N.D. Cal. Aug. 17, 2016).  Here, Plaintiff's
7  UCL, FAL, and CLRA claims are predicated on Defendant's violation of a FDA
8  regulation, section 101.60(c)(2)(iv), which is incorporated verbatim into
9  California's Sherman Law, and 21 U.S.C. § 343(a).  Plaintiff *is not* attempting to
10 impose requirements different than those imposed by the FDA.  Therefore,
11 Plaintiff's claims are not expressly preempted.

12      Second, it is well established that allowing a private individual to bring state
13 law claims based on a violation of the FDCA does not conflict with Congress's
14 intent.  *Swearingen.*, 2016 WL 4382544, *6.  Therefore, "state law claims
15 regarding mislabeled food are not impliedly preempted by the FDCA."  *Id.* at *7.

16 **VII.  PLAINTIFF HAS STATUTORY AND ARTICLE III STANDING**

17      **A.   Plaintiff Has Statutory Standing**

18      During the class period alleged herein, Plaintiff purchased numerous bottles
19 of Zico Coconut Water in Suisun City, California.  He usually purchased Zico
20 Coconut Water at 7-11 or Walmart in Suisun City, California.  Prior to purchasing
21 the Zico Coconut Water, Plaintiff observed the illegal and deceptive "No Sugar
22 Added" claim on the front label.  Plaintiff also observed advertisements for Zico
23 Coconut Water stating the products contained no added sugar on social media and
24 7-11 cooler doors.  (FAC ¶¶ 12, 13.)

25      [17] Compare Cal. Sherman Food, Drug and Cosmetic Law ("Sherman Law"),
26 Article 6 § 110660, with FDCA § 403(a)(1), 21 U.S.C. § 343(a)(1) (both identically
   provide that food is misbranded if its "labeling is false or misleading in any
27 particular."); *see also* Cal. Health & Safety Code § 110100(a) ("All food labeling
   regulations and any amendments...to the federal act, in effect on January 1, 1993, or
28 adopted after that date shall be the food labeling regulations of this state").

At the time of purchase, Plaintiff liked that the Zico Coconut Water was labeled "No Sugar Added." He inferred from that claim that other coconut waters contained added sugar. Plaintiff reasonably relied on Defendant's "No Sugar Added" claims in deciding to purchase Zico Coconut Water over other competing products and Defendant's "No Sugar Added" claims were important to Plaintiff in making his purchase decision due to health concerns, including lowering sugar consumption. (FAC ¶¶ 14, 15.)

Plaintiff intends to purchase the product again, but it is important to him that labels are accurate and not misleading. If the Zico Coconut Water did not include the illegal and deceptive "No Sugar Added" claim on the label, Plaintiff would not have purchased it or would have paid less for it. (FAC ¶¶ 16, 17.)

Thus, Plaintiff has alleged he read the "No Sugar Added" label, that it was a cause of his purchase and that he suffered economic harm. That is sufficient to allege economic injury. *See Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 991 (E.D. Cal. 2012); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).

Defendant appears to argue that Plaintiff does not have statutory standing under *California* law to seek an injunction of its illegal label claim. (Mot. p. 22.) That is incorrect. The UCL permits an injured plaintiff to obtain an injunction from the state court that prevents future harm to other unsuspecting consumers by "stopping such practices in their tracks." *In re Tobacco II*, 46 Cal. 4th 298, 320 (2009). Defendant's cases speak to enjoining events that have already transpired or have ceased.

**B.    Plaintiff Has Article III Standing**

Defendant's entire brief argument as to why Plaintiff does not have Article III standing to pursue injunctive relief is based on *Rahman*, 2014 WL 5282106, at 4-5. (Mot. p. 23.) But *Rahman*, 2014 WL 5282106, was a summary judgment decision based on a "review[] of all the evidence presented." As the court itself acknowledged, in ruling on defendant's motion to dismiss the SAC (*Rahman v.*

*Mott's*, 2014 WL 1379655, *4), it held that plaintiff's allegation that he intended to purchase the product again was sufficient to confer standing. *Id.* at 10, n.4. Here, Plaintiff has alleged his intent to purchase the product in the future (FAC ¶ 15). Thus, this Court should follow the court's analysis in *Rahman* and deny the motion to dismiss the injunctive relief claims on the pleadings.

Furthermore, Plaintiff sufficiently alleged the "likelihood of continuing or future harm" as a result of Defendant's conduct at issue here and has standing to seek injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); e.g Compl. ¶¶ 39, 57, 65, 67,81. As stated in *Chester v. TJX Companies, Inc*., 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016):

> It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.' The Court is unwilling to play Defendants' game… This Court will not, as Defendants wish, sound the death knell over California's consumer protection scheme. Defendants' motion to dismiss the injunctive relief claim is denied.

Numerous other courts are in accord. *See*, *e.g.*, *Cabral v. Supple, LLC*, No. 12 Civ. 85, 2012 WL 4343867, at *2 (C.D. Cal. Sept. 19, 2012) ("While Plaintiffs may not purchase the same . . . products as they purchased during the class period, because they are now aware of the true content of the products, to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws."); *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("injunctive relief would never be available in false advertising cases," and calling this "a wholly unrealistic result"); *Henderson v. Gruma Corp.*, 10-cv-04173 AHM (AJWx), 2011 WL 1362188, *7 (C.D. Cal. April 11, 2011) (a food labeling case explaining that, under Defendant's argument, "federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ("once bitten, twice shy") and would never have article III standing");

1  *Dean v. Colgate-Palmolive Co.*, 2015 WL 399913, *8 (C.D. Cal. June 17, 2015)

2  ("federal courts would effectively be prohibited from enjoining false advertising

3  under California's consumer protection laws"); *Ackerman v. Coca-Cola Co.*, No.

4  09 Civ. 395, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013) ("[C]ourts have

5  consistently held that plaintiffs have standing to seek injunctive relief based on the

6  allegation that a product's labeling or marketing is misleading to a reasonable

7  consumer.  To hold otherwise would effectively bar any consumer who avoids the

8  offending product from seeking injunctive relief."); *Koehler v. Litehouse, Inc.*,

9  2012 WL 6217635, *6 (N.D. Cal. 2012) (same).

10       Moreover, at least one court explained that a Plaintiff who is aware of a

11  deceptive label has Article III standing because "there is a likelihood of repeat

12  injury for the class as a whole since some class members do not have the same

13  knowledge as [plaintiff] now does, and on the basis of 'class standing,' the claims

14  may proceed." *Shahinian v. Kimberly-Clark Corp.*, 2015 WL 4264638 (C.D. Cal.

15  July 10, 2015).   Accordingly, Plaintiff has adequately alleged Article III standing.

16  **VIII.  THERE ARE NO GROUNDS TO IMPOSE A STAY**

17       There are no grounds to stay this case.  As discussed above, another case in

18  the Los Angeles County Superior Court has already been stayed based on the

19  assumption that this case will proceed.  Moreover, a stay would not assist judicial

20  economy.  Any opinion in *Rahman* is unlikely to resolve the central issue in this

21  case – whether Defendant's "No Sugar Added" claims violate the law – because,

22  as Defendant has explained, that is not one of the issues on appeal.  (Mot. p. 23).

23  At most, *Rahman* might (or might not) provided guidance to this and hundreds of

24  other cases in the Ninth Circuit as to the contours of Article III standing to seek

25  injunctive relief, which is only one of the several remedies sought here after

26  liability has been determined.

27  **IX.   CONCLUSION**

28       For the foregoing reasons, the motion to dismiss should be denied.

1    Dated:  June 8, 2017                    Respectfully submitted,

2                                            Capstone Law APC

3

4                                    By: /s/ Robert K. Friedl

5                                         Bevin A. Pike
                                          Robert K. Friedl
6                                         Trisha K. Monesi

7                                         Attorneys for Plaintiff Carlos Barrios

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT