++JEFFREY A. ROSENFELD (Bar No. 136896)
jeffrey.rosenfeld@dlapiper.com
RACHEL E. K. LOWE (Bar No. 246361)
rachel.lowe@dlapiper.com
MONICA D. SCOTT (Bar No. 268109)
monica.scott@dlapiper.com
SEAN R. CRAIN (Bar No. 291515)
sean.crain@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Telephone: (310) 595-3000
Facsimile: (310) 595-3300

Attorneys for Defendant
ZICO BEVERAGES LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CARLOS BARRIOS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>ZICO BEVERAGES LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 2:17-cv-01712-FMO (KSx)<br><br>**DEFENDANT ZICO BEVERAGES LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, STAY**<br><br>Hearing<br>Date:     June 29, 2017<br>Time:     10:00 a.m.<br>Dept.:     First Street Courthouse; Courtroom 6D<br><br>Complaint Filed:     March 2, 2017<br>FAC Filed:     May 17, 2017 |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................ 1

II. PLAINTIFF'S CLAIMS FAIL UNDER RULE 12(B)(6) ............................ 2

    A. The Opposition Admits Plaintiff's Claims Based On § 101.60(c)(2)(i) Are Deficient .............................................................. 3

    B. The Opposition Cannot and Does Not Cure Plaintiff's Claims Based Upon Alleged Violations of § 101.60(c)(2)(iv) ........................ 3

        1. Plaintiff's Reliance on Rahman v. Mott's and Park v. Knudson and Sons Is Misplaced ................................................. 3

        2. Plaintiff's "Plausibly Alleged" Arguments Also Fail ................ 5

III. PLAINTIFF'S "RESEMBLE AND SUBSTITUTE" THEORY IS PREEMPTED ................................................................................................ 7

    A. Plaintiff's "Interpretation" of "Resembles" and "Substitute" Has No Support .......................................................................................... 7

    B. Plaintiff's Inspection Guide, Statutory Interpretation, and Exemption Arguments Also Fail ....................................................... 8

IV. PLAINTIFF'S CLAIMS FAIL UNDER RULE 9(B) ................................. 11

V. PLAINTIFF LACKS STATUTORY STANDING .................................... 13

VI. IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A STAY ........ 14

# **TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 6

*Bruton v. Gerber Products Company*,
  --- Fed. Appx. ---, No. 15-15174, 2017 WL 1396221
  (9th Cir. Apr. 19, 2017) .......................................................................... 11, 12, 13

*Gustavson v. Mars, Inc.*,
  No. 13–cv–04537–LHK, 2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) .......... 15

*Peviani v. Hostess Brands, Inc.*,
  750 F. Supp. 2d 1111 (C.D. Cal. 2010) ............................................................... 9

*Rahman v. Mott's LLP*,
  No. CV-13-3482 SI, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014) .............. *passim*

*Rahman v. Mott's LLP*,
  No. CV-13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15. 2014) .................. 14

*Rahman v. Mott's LLP*,
  No. CV-13-3482 SI, 2014 WL 1379655 (N.D. Cal. Apr. 8, 2014) ............... 2, 14

*Russello v. United States*,
  464 U.S. 16 (1983) ............................................................................................ 10

*Trazo v. Nestle USA, Inc.*,
  No. 5:12-cv-2272, PSG 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ............. 13

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 977 (C.D. Cal. 2013) ............................................................... 13

**STATE CASES**

*In re Tobacco II*,
  46 Cal. 4th 298 (2009) ...................................................................................... 14

*Park v. Knudson and Sons, Inc.*
  No. CV-14-7845-DMG (C.D. Cal. Sept. 25, 2015) ................................... 3, 4, 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ................................................................................. 2, 11, 12, 13

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 2

**FEDERAL REGULATIONS**

21 C.F.R. § 101.13 ................................................................................. 1, 9, 10, 12, 13

21 C.F.R. § 101.30 ................................................................................................ 6

21 C.F.R. § 101.60 ........................................................................................ *passim*

21 C.F.R. § 101.9 ................................................................................................ 10

58 Fed. Reg. at 2327 ..................................................................................... 8, 11

58 Fed. Reg. at 2336 ...................................................................................... 7, 8

## I. INTRODUCTION

Plaintiff's Opposition does not save his fatally flawed mislabeling theory, namely that 100% coconut water with no sugar added cannot be labeled "No Sugar Added."

Plaintiff asserts this case "squarely presents one of the most important food labeling questions pending before California's District and State Courts . . . [,] whether [21 C.F.R. § 101.60(c)(2)(iv)] applies to fruit juices." (ECF 29, 1:1-10.) This question, however, has already been answered by the FDA: *Yes*. As Plaintiff admits on the very first page of the Opposition, the FDA considers coconut water a fruit juice. (ECF 29, 1:25-28.) The "No Sugar Added" claim at issue here is explicitly permitted under 21 C.F.R. § 101.60(c)(2)(iv) (allowing "No Sugar Added" claim where "[t]he food that it resembles and for which it substitutes normally contains added sugars."). Per the FDA, juices "resemble[] and substitute []" for other juices. *See* 21 C.F.R. § 101.13(d); ECF 23-6 at p. 13. Simply put, the "No Sugar Added" claim on the ZICO Coconut Water label complies with 21 C.F.R. § 101.60(c)(2)(iv) because ZICO Coconut Water "resembles" and "substitutes" for other products that normally contain added sugar, namely other juices, including juices made by competitors and sold alongside ZICO Coconut Water. (ECF 25, Ex. D.) Plaintiff's theory that 100% coconut water can never be labeled "No Sugar Added" because it only "resembles and substitutes" for other 100% coconut water is wrong, contrary to the regulation and FDA guidance, and thus preempted.

Using a "kitchen-sink" approach, Plaintiff advances numerous confusing arguments, often mischaracterizing Defendant's positions and the FDA's position on comparison product sets, hoping to save his case. These efforts fail because there is nothing untrue or misleading about Defendants' "No Sugar Added" claim and the claim fully complies with § 101.60(c)(2)(iv). Moreover, Plaintiff readily admits that his alleged violation of § 101.60(c)(2)(i), *i.e.*, his claim "some ZICO

Coconut Water does contain added sugars," based on vague statements pled on information and belief, is deficient.

Next, Plaintiff has an equally difficult time articulating why his FAL, CLRA, and fraud-based UCL claims are adequately pled under Rule 9(b), preferring to cite to case law concerning impermissible nutrient content claims on baby food that have no application here. Even with the benefit of an Opposition, Plaintiff cannot sufficiently allege how a reasonable consumer would be misled by Defendant's "No Sugar Added" claim.

Third, Plaintiff offers no reasoned explanation why he has *statutory* standing to pursue injunctive relief. Instead, Plaintiff spends several pages of the Opposition discussing Article III standing, which is not at issue in this Motion pending the Ninth Circuit's anticipated guidance in *Rahman v. Mott's LLP*, USCA No. 15-15579. Plaintiff cannot allege any likelihood of future harm sufficient to confer statutory standing under the UCL, FAL, or CLRA because he now fully understands the "No Sugar Added" claim.

Finally, Plaintiff's arguments against a brief stay pending *Rahman v. Mott's LLP* are unavailing. As Plaintiff's counsel is well-aware (because they are counsel in *Mott's*), *Mott's* concerns whether injunctive relief is potentially available in a case such as this, as well as certification issues regarding damages that would be instructive here if Plaintiff's case proceeds. That the Los Angeles Superior Court stayed *Reza v. ZICO Beverages LLC* pending this case is no reason not to issue a brief stay pending *Mott's* here.

## II.  PLAINTIFF'S CLAIMS FAIL UNDER RULE 12(b)(6)

Plaintiff's FAC fails to allege any violation of either § 101.60(c)(2)(i) or § 101.60(c)(2)(iv), which are predicates to each of his consumer claims. Because Plaintiff has no private right of action under the FDCA, he must allege violations of "California's Sherman law and consumer protection statutes, which wholly adopt the federal requirements." (FAC, ¶ 2.)

### A. The Opposition Admits Plaintiff's Claims Based On § 101.60(c)(2)(i) Are Deficient

Plaintiff's Opposition acknowledges that his FAC includes insufficient facts to assert a violation of § 101.60(c)(2)(i), *i.e.*, his claim "some ZICO Coconut Water does contain added sugars." Not surprisingly, the FDA requires no sugar to be added for a product to be labeled "No Sugar Added." *See* § 101.60(c)(2)(i). In the FAC, Plaintiff vaguely alluded to alleged laboratory analyses that "confirmed" ZICO Coconut Water contains sugars that are not naturally occurring in coconut water. (FAC, ¶ 29.) These assertions were and continue to be wholly unsupported. And, indeed, they are contrary to the ZICO Coconut Water label and ingredient referenced and incorporated by reference in paragraph 6 of the FAC. Now, Plaintiff admits "he could amend to add detail, if necessary" to support his § 101.60(c)(2)(i) claim thereby acknowledging that his claims based on the predicate violation of this regulatory criterion are deficient as pled.[1] (ECF 29, 12:3-13:2.) For this reason alone, the Court should grant Defendant's Motion and dismiss Plaintiff's § 101.60(c)(2)(i) claim.

### B. The Opposition Cannot and Does Not Cure Plaintiff's Claims Based Upon Alleged Violations of § 101.60(c)(2)(iv)

Even with the benefit of an Opposition, Plaintiff cannot put forth a reasoned argument as to how or why his FAC sufficiently alleges a cognizable violation of §101.60(c)(2)(iv).

#### 1. Plaintiff's Reliance on *Rahman v. Mott's* and *Park v. Knudson and Sons* Is Misplaced

First, Plaintiff, citing to *Rahman v. Mott's LLP (Mott's)*, No. CV-13-3482 SI, 2014 WL 325241, at *5 (N.D. Cal. Jan. 29, 2014)[2] and *Park v. Knudson and Sons,*

---

[1] Plaintiff's improper pleading is not justified by his alleged altruistic motivation regarding allegedly confidential or embarrassing information. Plaintiff could have filed his FAC under seal or alleged specific facts, assuming any existed, in a way not to reveal allegedly confidential information.

[2] Defendant vehemently disagrees with Plaintiff's assertion that it has misstated or

*Inc.* (*Park*), No. CV-14-7845-DMG (JPRx) (C.D. Cal. Sept. 25, 2015), argues that he has sufficiently alleged a violation of § 101.60(c)(2)(iv) because "[t]he notion that a fruit juice product cannot utilize a 'No Added Sugar' label claim because the type of juice does not normally contain added sugars breaks no new legal ground." (ECF 29, 5:13-15.) Plaintiff asserts both *Mott's* and *Park* found the allegation "100% Apple Juice does not resemble and substitute for food that normally contains added sugar because other brands of apple juice generally do not contain added sugar due to the substantial inherent sugar content of apple juice" sufficient to state a violation of § 101.60(c)(2)(iv). (ECF 29, 5:17-24.)

However, neither *Mott's*, nor *Park* (which cites to *Mott's* with no independent analysis), support Plaintiff's argument that there is a violation of § 101.60(c)(2)(iv) here. Plaintiff's allegations are *not* identical to those discussed in *Mott's* and *Park*, nor is there any evidence the defendants in *Mott*'s put forth the same evidence regarding how the FDA views "substitute" juice products that Defendant has put forth here, discussed in more detail below in Section III. (ECF 25-1, 15:10-21:2.) Nowhere in the FAC does Plaintiff make the specific allegation that "competitor's brands of 100% coconut water do not contain added sugar due to the substantial inherent sugar content of coconut water," as was precisely alleged in *Mott's*. 2014 WL 325241, at *5. Nor would it make sense to do so, given apples and coconuts have entirely different natural inherent sweetness. *Mott's* found these

---

misrepresented the summary judgment holding in *Mott's*. (ECF 29, 2:22-3:6.) Defendant quoted the court's own opinion. *Mott's* found that because "the allegedly deceptive nature of [Mott's 'No Sugar Added'] statement is not self-evident (presumably both parties would agree that 'No Sugar Added' is literally true, in that it accurately reflects the ingredients used to make Mott's 100% Apple Juice)," the plaintiff must produce some evidence as to whether a reasonable consumer would be misled. The plaintiff could not and the court granted summary judgment in favor of Mott's. Additionally, Defendant denies it mischaracterized *Major v. Ocean Spray Cranberries, Inc.* Plaintiff actually mischaracterizes Defendant's citation as implying *Major* stood for the proposition that the "No Sugar Added" label here complies with the regulations. (ECF 29, 3:22-28.) Defendant did no such thing.

DLA Piper LLP (US)
Los Angeles

EAST\144618735.1 -4-
**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PLAINTIFF'S FIRST AMENDED COMPLAINT**

*specific allegations* significant to its decision denying defendant's motion to dismiss plaintiff's apple juice claims because it *granted* defendant's motion to dismiss plaintiff's apple sauce claims for failure to include them. 2014 WL 325241, at *5. The plaintiff in *Mott's* was never able to resurrect his apple sauce claims and the case proceeded solely on his apple juice claims. (ECF 26, Ex. A, p. 5.)

In any event, the sole support for Plaintiff's *Mott*'s argument is footnote 4, on which Plaintiff is attempting to rely for an overly narrow view of "resemble" and "substitute" products. 2014 WL 325241, at *5 n. 4. *Mott's*, however, did not make any specific rulings regarding the appropriate set of comparison products for apple juice or apple sauce (or even juice in general, let alone coconut water). *Id.* The defendant in *Park* also failed to make the "resembles and substitutes" arguments Defendant makes here, backed up with FDA guidance, or make the connection between its products containing no added sugar and other similar products containing added sugar. *See generally Park,* No. CV-14-7845-DMG (JPRx). As such, neither *Mott's* nor *Park* is instructive on this issue.

### 2. Plaintiff's "Plausibly Alleged" Arguments Also Fail

Plaintiff also makes a series of (often hard to follow) arguments that he has sufficiently alleged a violation of § 101.60(c)(2)(iv) because he has "plausibly alleged that there is no food that ZICO Coconut Water resembles and substitutes for that normally contains added sugars." (ECF 29:1-3.)

First, Plaintiff proffers Defendant's argument that it is "'implausible' that 'the only substitute foods for the ZICO Coconut Water' is 'pure coconut water harvested from a coconut,'" "misses the point, which is that if there is a food which ZICO Coconut Water resembles and substitutes for, identifying that food is Defendant's burden since that is its defense to the claim that its label is unlawful." (ECF 29, 7:4-8.) This argument lacks case law or other support. It is not Defendant's "burden" to allege a violation of § 101.60(c)(2)(iv), it is Plaintiff's

-5-

burden, which he has failed to carry. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In any event, Defendant did identify multiple foods with added sugar ZICO Coconut Water "resembles" and "substitutes" for and requested judicial notice of the applicable substitute product labels in conjunction with its Motion. (ECF 26, Ex. D.) Plaintiff's claim that "Defendant fails to even present evidence that any of these other products contain added sugar" is belied by the listing of "high fructose corn syrup," "sugar," "cane sugar" and "beet sugar" listed on the product ingredient lists. (ECF 26, Ex. D.) Indeed, Plaintiff even admits in his Opposition that other fruit juices may (and often do) contain added sweeteners. (ECF 29, 12:24-28.)

Second, Plaintiff asserts "there is no food that ZICO Coconut Water resembles and substitutes for that contains added sugars" and that "this too is a plausible allegation" supporting his theory of the case because "100% juices by definition do not normally contain *added* sugars." (ECF 29, 7:14-16) (emphasis in original). Plaintiff cites to 21 C.F.R. § 101.30(b)(3), part of the percentage juice declaration which discusses labeling requirements for "100 percent juice . . . also contain[ing] non-juice ingredients," without explanation, as support for this argument. (ECF 29, 7:19-25.) This argument again relies, without any support, on Plaintiff's assertion that the only "substitute" foods for 100% juice products like ZICO Coconut Water are other 100% juices. Contrary to Plaintiff's unfounded arguments, per the FDA, juices "resemble[] and substitute[]" for other juices. (ECF 25-1, 15:10-21:2.) Further, Plaintiff's citation to 21 C.F.R. § 101.30(b) actually supports Defendant's argument that the FDA considers juice as an established, broad category of beverages because, as set for in § 101.30(b), the FDA requires declaring the percentage of juice in a juice beverage, whether a 100% juice product or a lesser percentage juice product.

Third, relying on another footnote in *Mott's*, 2014 WL 325241, n.5, Plaintiff implies that *Mott's* "rejected" Defendant's argument that "substitute" foods for

juices (including coconut water) include other juices with added sugar. (ECF 29, 8:12-18.) *Mott's* did no such thing. Rather, *Mott's* only stated (in a footnote) that the defendant in that case "failed to explain how its 100% Apple Juice product would qualify as a 'substitute' for these juices under the regulations." 2014 WL 325241, at *5 n. 5. Contrary to *Mott's*, Defendant here has fully explained, with guidance from the FDA, that the FDA considers coconut water a juice and juices "resemble and substitute for" other juices, including juices with added sugar. (ECF 25-1, 15:10-21:2.)

### III. PLAINTIFF'S "RESEMBLE AND SUBSTITUTE" THEORY IS PREEMPTED

Plaintiff makes several convoluted arguments in an attempt to counter Defendant's straightforward argument rooted in the FDA's regulations that Plaintiff's theory based on § 101.60(c)(2)(iv) is preempted. None are successful. The simple facts are thus: Plaintiff's position that "pure coconut waters harvested from a coconut" can never be labeled "No Sugar Added" under § 101.60(c)(2)(iv) because they only resemble and substitute for other identical "pure coconut water harvested from a coconut" is contrary to FDA guidance.

#### A. Plaintiff's "Interpretation" of "Resembles" and "Substitute" Has No Support

Plaintiff takes issue with Defendant's characterization of his interpretation of "resembles" and "substitutes" as "strained" and supported by "misleading" quotations. (ECF 29, 10:23-25.) Defendant stands by its characterization of Plaintiff's arguments as lacking support, either in the applicable case law or regulations.

First, Plaintiff, citing to 58 Fed. Reg. at 2336 (FDA commentary), argues generally that "no added sugar" claims are "not appropriate to describe foods that normally contain added sugars . . . e.g., fruit juices." (ECF 29, 11:1-3.) Plaintiff is simply wrong on this point. Plaintiff has a basic misunderstanding of this

commentary and the regulations cited therein.  Defendant stands by its assertion that 58 Fed. Reg. at 2336 is being used by Plaintiff in a misleading way to imply that "No Added Sugar" cannot be used on fruit juices.  (ECF 25, 18:17-19:8.)  Nowhere in the Federal Register does it state that fruit juices cannot make "No Added Sugar" claims.  All that is required to make a "No Added Sugar" claim is compliance with § 101.60(c)(2).  Moreover, Defendant never stated that the FDA was referring to broccoli in 58 Fed. Reg. at 2336, the reference was used as an example of common sense.

Second, Plaintiff brings up Defendant's reference to § 101.60(c)(3), stating that § 101.60(c)(3), "does not govern 'No Added Sugar' claims and has no application here."  (ECF 29, 11:10-23.)  On this point, both parties agree.  The only reason Defendant even mentioned § 101.60(c)(3) in its moving papers is because Plaintiff cited to 58 Fed. Reg. at 2327 in paragraph 47 of the FAC, and 58 Fed. Reg. at 2327, in turn, specifically concerns proposed rule § 101.60(c)(3) as support for his mislabeling theory.  Now Plaintiff admits that it has absolutely nothing to do with this case, cannot support his mislabeling theory, and should be disregarded.

Third, Plaintiff asserts on one hand Defendant's argument that "nowhere in the actual 'No Sugar Added' regulation does the FDA say that a 'No Sugar Added' claim is inappropriate for use on juice products" lacks merit because "coconut water is a food that does not normally contain added sugars."  (ECF 29, 11:24-12:2.)  However, on the other hand, Plaintiff admits that the FDA regulates coconut water as "juice" and admits that juices can be (and are often) sweetened with added sugar.  (ECF 29, 12:24-28.)  Plaintiff's argument, not Defendant's, lacks merit.

### B. <u>Plaintiff's Inspection Guide, Statutory Interpretation, and Exemption Arguments Also Fail</u>

Recognizing that the FDA Inspection Guide submitted to the Court with Defendant's moving papers is powerful evidence that the FDA views comparison juice products broadly, Plaintiff attempts to downplay the guide's relevance by

DLA Piper LLP (US)
Los Angeles

EAST\144618735.1 -8-
**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PLAINTIFF'S FIRST AMENDED COMPLAINT**

implying it is only used in criminal investigations and is therefore irrelevant. (ECF 29, 16:12-17:15.) Plaintiff is incorrect. The Inspection Guide, which is "attachment 26" (RFJN ISO Reply Ex. I, p. 3), is on a webpage featuring the title "Guide to Nutrition Labeling and Education Act (NLEA) Requirements." (RFJN ISO Reply Ex. I, p. 1.) The cover page of the Inspection Guide states: "The Following information is provided as assistance for reviewing food labels for compliance with new requirements for nutrition labeling and nutrient claims." (*Id.* at p. 3.) In other words, the Inspection Guide is used by the FDA for guidance regarding nutrition labeling and claim requirements, the very claims at issue here, and not just in criminal probes. Similar guides are also used by courts when analyzing labeling claims in class actions. *See, e.g., Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010) (judicially noticing the FDA's Food Labeling Guide in consumer class action involving "0 grams trans fat" claims on baked-goods).[3] The Inspection Guide is highly relevant guidance – analysis from the FDA itself – that the Court may rely on here.

Next, Plaintiff argues that "Defendant's interpretation of [§ 101.60(c)(2)(iv)] fails to give effect to the word 'resembles' in the regulation" and that the "rules of statutory construction" do not permit such an interpretation. (ECF 29, 14:1-15:14.) Plaintiff is wrong again.

Plaintiff's entire case turns on the interpretation of "resembles" and "substitutes" in § 101.60(c)(2)(iv) and "substitute food" in § 101.13(d). Without any support, Plaintiff rests his case on an interpretation of "resemble" and "substitute" as meaning "identical." *See* ECF 29, 4:9-12:2. Plaintiff's misguided interpretation is that the only juice that "pure coconut water from harvest" "resembles and for which it substitutes" is other "pure coconut water from harvest."

---

[3] This is neither a new argument, nor new case law. *Peviani* and the Food Labeling Guide were detailed in Defendant's Request for Judicial Notice submitted with its moving papers. (ECF 26, 3:21-4:7.)

(ECF 29, 4:16-5:12.) This is not what the plain text of either regulation states, nor what the rules of statutory interpretation mandate. As Plaintiff admits, the common dictionary definition of "resemble" means "to be like or similar to." (ECF 29, 4:24.) "Resemble" does not mean "identical." Other juices (ECF 26, Ex. D), resemble coconut water under this definition. The same goes for "substitute food" in § 101.13(d) – nowhere in the definition of "substitute food" does it mandate that a "substitute food" be identical to the food it is substituting for. Here, Plaintiff disregards the key terms "resemble" and "substitute," and adds in his own term, "identical," contrary to the rules of statutory construction detailed in the Opposition. (ECF 29, 14:1-15:14.)

Further, the FDA could have used the word "identical" and chose not to do so. Another canon of statutory interpretation is that the use of different words or terms within a statute demonstrates that the issuing body intended to convey a different meaning for those words. *See Russello v. United States*, 464 U.S. 16, 23 (1983). The FDA uses the word "identical" in other parts of 21 C.F.R. part 101, *see, e.g.*, § 101.9, but did not use it in § 101.60; therefore, "resemble" and "substitute" do not (and cannot) mean "identical."

Moreover, Defendant never advocated or argued for the position that fruit juices are "exempt" from § 101.60(c)(2)(iv). Plaintiff distractingly argues "the FDA did not intend to exempt fruit juices from the requirements of [§] 101.60(c)(2)(iv)" because, citing Fed. Reg. at 2337,[4] the FDA "*expressly considered and rejected* a request exempting fruit juice from the regulation. . . . because that conduct is misleading" (ECF 29, 15:18-16:8) (emphasis in original). Plaintiff (again) misconstrues Defendant's position – it has nothing to do with exemption. Rather, Defendant's preemption argument is that its "No Sugar Added" claim *complies* with the regulation and Plaintiff seeks to impose requirements

---

[4] Although Plaintiff cited to 2337, the correct citation is 2327.

contrary to what the FDA requires. Further, the commentary in 58 Fed. Reg. at 2327 never states or finds the use of "No Added Sugar" on fruit juices "misleading." The conduct the commentary discusses is, in fact, the use of "No Added Sugar" claims when the product (not even specifically juice products) was *sweetened with juice concentrate*, specifically. Plaintiff misleadingly block quotes portions of the commentary in his Opposition, conveniently leaving out the most important sentence for context but including the preceding sentence as well as the sentence immediately after. (ECF 29, 16:1.) The missing sentence states: "*Thus, the labeling of a product sweetened with juice concentrate, though it bears a factual statement identifying the source of the sweetener, would be misleading if it included the statement 'no added sugar.'*" Fed. Reg. at 2327. For example, use of a "No Added Sugar" claim on a muffin sweetened with fruit juice may not be appropriate. The commentary has no bearing on this case.

Finally, Plaintiff also argues that his claims are not preempted because he "*is not* attempting to impose requirements different than those imposed by the FDA." (ECF 29, 22:9-10) (emphasis added). Not so, as Plaintiff's strained interpretation of "resembles" and "substitutes" under § 101.60(c)(2) as only permitting *identical* substitute foods imposes requirements on Defendant contrary to those actually required by the FDA regulations at issue.

## IV. PLAINTIFF'S CLAIMS FAIL UNDER RULE 9(b)

Plaintiff relying exclusively on *Bruton v. Gerber Products Company*, --- Fed. Appx. ---, No. 15-15174, 2017 WL 1396221 (9th Cir. Apr. 19, 2017) makes two main arguments as to why two paragraphs of allegations (paragraphs 52 and 53) in his 80-plus paragraph FAC are sufficient to comply with Rule 9(b).[5] Both fail.

---

[5] Plaintiff's claim that "[t]he allegation that the product contains sugar despite its label claim alleges deceptive conduct" (ECF 29:1-4) is sufficient to withstand Rule 9(b) is without citation to case law or other support and fails for all of the reasons detailed in Section [XX] *supra* and ECF 25-1, 14:3-13.

First, citing *Bruton*, Plaintiff asserts the FAC complies with Rule 9(b) because "the Ninth Circuit has held that the facts alleged by Plaintiff raise an inference of deceit." (ECF 29, 19:13-14.) Specifically, Plaintiff asserts "*Bruton*'s theory was that the combination of (a) the presence of the claims on Gerber's products (in violation of FDA regulations), and (b) the lack of claims on competitor's products (in compliance with FDA regulations) made Gerber's labeling likely to mislead the public into believing that Gerber's products were of a higher quality than its competitor's products." (ECF 29, 19:14-22.) Plaintiff further states he "pleaded the same theory of deception that the Ninth Circuit found compelling in *Bruton*" in paragraph 60 of the FAC. (ECF 29, 20:3-4.) The applicable facts and regulations at issue in *Bruton*, however, make its "theory of deception" inapplicable to the facts of *this* case.

*Bruton* involved alleged impermissible nutrient content claims on *baby food*. *Bruton*, 2017 WL 1396221, at *1. The main issue in *Bruton* concerned FDA regulation 21 C.F.R. § 101.13(b)(3), which provides that "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age unless the claim is specifically provided for" by particular regulations. *Bruton*'s theory of deception relies not only on nutrient content claims defendant's competitors allegedly did not make, but that they *could not* make unless they wanted to run afoul of § 101.13(b)(3).

Unlike the defendant in *Bruton*, Defendant and its competitors are permitted to make "No Added Sugar" claims on their products so long as they comply with the requirements of 21 C.F.R. § 101.60(c)(2). Plaintiff's "theory of deception" is not and cannot be the same as in *Bruton* because use of the claim "No Sugar Added" by Defendant and its competitors is permitted under applicable regulations. The Opposition acknowledges as much, quoting from *Bruton*: "Gerber does not comply with FDA regulations that otherwise prevent its competitors from making the same claim. . . ." (ECF 29, 19:28-20:2.) Based upon the cases filed by

Plaintiff's attorneys since the beginning of 2017, Defendant's competitors, including Naked Juice, make use of "No Added Sugar" claims on a variety of coconut water and other juices. (ECF 25-1, 9:3-14.) *Bruton* offers no support.[6]

Second, Plaintiff asserts, citing a footnote in *Bruton*: "*Bruton* confirmed that violation of the 'No Sugar Added' regulation is likely to deceive a reasonable consumer," (ECF 29, 21:9-10) because the nutrition panel under current regulations does not "tell the consumer whether any of the sugar in its products was added. . . ." (ECF 29, 21:11-17.)

Plaintiff's reliance on *Bruton* is (again) misplaced. The concluding sentence in *Bruton*'s footnote 1 cited by Plaintiff merely confirms certain nutrient content claims for products made for children under two are prohibited by 21 C.F.R. § 101.13(b)(3). (ECF 29, 11-17.) The same is not true for "No Added Sugar" claims under 21 C.F.R. § 101.60(c)(2). Further, "No Added Sugar" claims are also required to carry a calorie disclaimer in compliance with § 101.60(c)(2)(v). (FAC, ¶¶ 6-7.)

Plaintiff's allegations are insufficient under Rule 9(b) and applicable case law and should be dismissed. *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 977, 898 n.32 (C.D. Cal. 2013); *Trazo v. Nestle USA, Inc.*, No. 5:12-cv-2272, PSG 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013).

## V.  PLAINTIFF LACKS STATUTORY STANDING

Curiously, Plaintiff's Opposition to Defendant's *statutory standing* argument (based on California law) is devoid of any mention of the *Mott's* decision (or any of Defendant's cited authority) finding that, despite the plaintiff's claims that he

---

[6] Similarly without basis is Plaintiff's argument, citing *Bruton*, that all he "would need to do to survive summary judgment would be to produce evidence of the label." (ECF 29, 21:2-3.) Again, *Bruton* is inapplicable because Gerber's competitors could not make similar claims. Using Plaintiff's own reasoning, mere evidence of competitor's labels with the same "No Sugar Added" labeling as ZICO Coconut Water, would be sufficient to defeat any attempt by Plaintiff to move for summary judgment on the "reasonable consumer" issue.

1  "wishes to purchase Mott's apple juice again[,]" his "attempt to rely on past injury
2  to provide statutory standing for injunctive relief (without showing a likelihood of
3  future harm) is inconsistent with Prop 64's prohibition on the ability of individuals
4  to file lawsuits 'on behalf of the public.'" *Rahman v. Mott's LLP*, No. CV-13-3482
5  SI, 2014 WL 5282106, at *5-6 (N.D. Cal. Oct. 15. 2014). The Court should follow
6  *Mott's* here and also find no statutory standing.

7  Plaintiff does, however, raise *Mott's* later when discussing Article III
8  standing (ECF 29, 23:23-25:15), an argument not at issue here. Plaintiff argues the
9  Court should not dismiss Plaintiff's injunctive relief claim because another *Mott's*
10 decision, *Rahman v. Mott's LLP*, No. CV-13-3482 SI, 2014 WL 1379655, at 4
11 (N.D. Cal. Apr. 8, 2014) "held that plaintiff's allegation that he intended to
12 purchase the product again was sufficient to confer standing." (ECF 29, 23:27-
13 24:2.) The *Mott's* motion to dismiss decision cited by Plaintiff on this point,
14 however, was superseded by the court's summary judgment ruling and, moreover,
15 does not concern injunctive relief, it only concerns standing with respect to
16 economic injury and damages. "Injunctive relief" is not mentioned in the entire
17 decision. *See generally*, 2014 WL 1379655.

18 With respect to statutory standing, Plaintiff's entire argument is based on a
19 mischaracterization of *In re Tobacco II*, 46 Cal. 4th 298, 320 (2009), implying that
20 *named* class representatives *do not* have to meet all statutory standing requirements
21 under Prop 64. (ECF 29, 23:16-22.) *In re Tobacco II* says the opposite: named
22 class representatives must meet all statutory standing requirements in order to
23 pursue injunctive relief. 46 Cal. 4th at 315-316 ("the representative plaintiff – is
24 required to meet the standing requirements"). Plaintiff himself does not and cannot
25 meet these requirements because he can no longer be misled.

26 **VI.  <u>IN THE ALTERNATIVE, THE COURT SHOULD ISSUE A STAY</u>**

27 Plaintiff's main argument against a brief stay pending the Ninth Circuit's
28 resolution of *Mott's* is that a case with virtually-identical and overlapping claims,

*Reza v. Zico Beverages LLC*, Los Angeles Superior Court Case No. BC 647064, "has already been stayed based on the assumption that this case will proceed." (ECF 29, 25:17-19.) This argument carries no weight.

First, *Reza* was stayed on the Court's own accord; Defendant never filed a motion to stay *Reza* based on this action. *See generally* No. BC 647064 Docket. Second, Defendant here requests only a brief stay pending the outcome of *Mott's*, which was heard on April 19, 2017. A decision by the Ninth Circuit is expected soon. In any event, a brief stay based on *Mott's* will serve the judicial economy of both *Reza* and this case as the only major difference between this case and *Reza* is the allegation here that ZICO Coconut Water adds sugar notwithstanding the "No Sugar Added" label claim. (*See generally* RFJN ISO Reply, Ex. J, *Reza* First Amended Complaint.) Moreover, the putative class definition in *Reza* is subsumed by the proposed class in *Barrios*. (*Id.* at ¶ 29.)

Plaintiff also argues that "a stay will not assist judicial economy" because "[a]ny opinion in [*Mott's*] is unlikely to resolve the central issue in this case – whether Defendant's 'No Sugar Added' claims violate the law. . . ." (ECF 29, 25:19-21.) This argument misses the point.

Contrary to Plaintiff's assertions, a stay may be appropriate for a whole host of reasons, not just because another case would "resolve the central issue in [this] case." The standard is not whether it would "resolve a central issue" but rather whether the stay will "simplify issues" or resolve "questions of law." *Gustavson v. Mars, Inc.,* No. 13–cv–04537–LHK, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014). Here, a stay pending *Mott's* would do both as the issues on appeal include: (1) whether a consumer lacks standing to pursue injunctive relief once he or she is aware of the allegedly misleading or unlawful nature of the label; and (2) whether the district court abused its discretion in denying certification of a liability-only class because there was no evidence showing predominance as to damages. (ECF 26, Ex. A, Appellant's Opening Brief, USCA No. 15-15579, pp. 2-3.) Guidance on

1 class certification requirements in the context of a virtually-identical case will
2 certainly be invaluable and likely simplify class certification here.  Similarly,
3 although not at issue in this brief, whether a consumer has Article III standing to
4 pursue injunctive relief after he or she is aware of the allegedly misleading label
5 will resolve a question of law.  Accordingly, there is no reason why this case should
6 not be briefly stayed pending the Ninth Circuit's guidance.

7 Dated:  June 15, 2017 **DLA PIPER LLP (US)**

By:  /s/ Jeffrey A. Rosenfeld
      JEFFREY A. ROSENFELD
      RACHEL E.K. LOWE
      MONICA D. SCOTT
      SEAN R. CRAIN
      Attorneys for Defendant
      ZICO BEVERAGES LLC

DLA PIPER LLP (US)
LOS ANGELES

EAST\144618735.1 -16-
**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE,  STAY PLAINTIFF'S
FIRST AMENDED COMPLAINT**